# 24-0725-cv(L), 24-0728-cv(CON)

# United States Court of Appeals
*for the*
# Second Circuit

———◆———

A. H., by her next friend E.H., R. D., by her next friend M.D., J. D., by his next friend D.D., H. L., on behalf of themselves and all others similarly situated,
*(For Continuation of Caption See Inside Cover)*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF AND SPECIAL APPENDIX FOR PLAINTIFFS-APPELLANTS A. H., BY HER NEXT FRIEND E.H., R. D., BY HER NEXT FRIEND M.D., J. D., BY HIS NEXT FRIEND D.D., H. L., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, A. B., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, J. S., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, J. C. M., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, AND L. P., BY HER NEXT FRIEND C.P., AND INTERVENOR-PLAINTIFFS-APPELLANTS E. B., M. W., BY HIS NEXT FRIEND T.D., J. D. C., J. P. S., BY HIS NEXT FRIEND S.S., M. F., O. A., M. Y., BY HIS NEXT FRIEND B.L. AND C. H.**

DAVID J. ABRAMS
STEPHEN P. THOMASCH
ANDREW W. BRELAND
YARDEN N. HODES
KASOWITZ BENSON TORRES LLP
*Attorneys for A. H., by her next friend E.H., R. D., by her next friend M.D., J. D., by his next friend D.D., H. L., on behalf of themselves and all others similarly situated, A. B., on behalf of themselves and all others similarly situated, J. S., on behalf of themselves and all others similarly situated, J. C. M., on behalf of themselves and all others similarly situated, and L. P., by her next friend C.P., and Intervenor-Plaintiffs-Appellants E. B., M. W., by his next friend T.D., J. D. C., J. P. S., by his next friend S.S., M. F., O. A., M. Y., by his next friend B.L. and C. H.*
1633 Broadway
New York, New York 10019
(212) 506-1700

CP COUNSEL PRESS    (800) 4-APPEAL • (329423)

A. B., on behalf of themselves and all others similarly situated, J. S.,
on behalf of themselves and all others similarly situated, J. C. M., on behalf of
themselves and all others similarly situated, L. P., by her next friend C.P.,
DISABILITY RIGHTS NEW YORK,

*Plaintiffs-Appellants,*

T. C., by his next friend D.S., M. L., on behalf of
themselves and all others similarly situated,

*Plaintiffs,*

E. B., M. W., by his next friend T.D., J. D. C., J. P. S., by his next friend S.S.,
M. F., O. A., M. Y., by his next friend B.L., C. H.,

*Intervenor-Plaintiffs-Appellants,*

– v. –

NEW YORK STATE DEPARTMENT OF HEALTH, MARY T. BASSETT,
in her official capacity as Commissioner of the New York State Department of
Health, NEW YORK STATE OFFICE FOR PEOPLE WITH DEVELOPMENTAL
DISABILITIES, KERRI NEIFELD, in her official capacity as Commissioner of
the New York State Office for People with Development Disabilities,

*Defendants-Appellees.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................ iv

PRELIMINARY STATEMENT ..........................................................1

JURISDICTIONAL STATEMENT ....................................................4

ISSUES PRESENTED FOR REVIEW ...............................................5

FACTUAL AND PROCEDURAL HISTORY ....................................5

    A.    Appellants And New York's HCBS Waiver Program.........................5

    B.    Procedural History.................................................................10

        1.    Plaintiffs' Complaint, Amended Complaint, And Motion For A Preliminary Injunction.................................................10

        2.    Appellees Move To Dismiss The Amended Complaint In Part And Seek To Moot Named Plaintiffs' Claims………......11

        3.    Appellants' Motion To Intervene Based On Defendants' Attempt To Moot Named Plaintiffs' Claims ...........................14

        4.    Appellees Delay Discovery And Resolution Of The Case To Moot All Plaintiffs' Claims ..................................................15

SUMMARY OF ARGUMENT ..........................................................17

STANDARD OF REVIEW ................................................................19

ARGUMENT ....................................................................................19

    I.    THIS ACTION IS NOT MOOT DESPITE THE PLACEMENT OF THE NAMED PLAINTIFFS IN COMMUNITY SETTINGS.....19

        A.    The "Inherently Transitory" Exception To Mootness Applies ...................................................................................21

        B.    Named Plaintiffs' Claims Are Capable Of Repetition, Yet Evading Review ......................................................................27

        C.    Appellees Have Voluntarily Ceased Their Unlawful Actions .........................................................................................29

        D.    Appellants Did Not Have A Meaningful Opportunity To Seek Class Certification............................................................30

ii

II.  THE DISTRICT COURT ERRED BY DENYING
     INTERVENTION .................................................................32

     A.   Members Of The Putative Class Are Permitted To
          Intervene...................................................................32

     B.   Intervention Was Otherwise Appropriate .................................34

III. THE DISTRICT COURT ERRED BY DISMISSING THE
     AMENDED COMPLAINT WITHOUT FULL BRIEFING OR
     OPPORTUNITY TO BE HEARD ......................................................41

CONCLUSION .......................................................................44

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  297 F.R.D. 90 (S.D.N.Y. 2013) ............................................................39

*Bellin v. Zucker*,
  457 F. Supp. 3d 414 (S.D.N.Y. 2020) .................................................30

*City of Syracuse v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
  No. 1:20-cv-06885-GHW, 2021 WL 1051625 (S.D.N.Y. Mar. 19, 2021) ........34

*Comer v. Cisneros*,
  37 F.3d 775 (2d Cir. 1994) ....................................................21, 23, 34, 36

*Conn. Parents Union v. Russell-Tucker*,
  8 F.4th 167 (2d Cir. 2021) ...................................................................19

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
  149 F.R.D. 55 (S.D.N.Y. 1993) ......................................................33, 39

*Eckert v. Equitable Life Assurance Soc'y of U.S.*,
  227 F.R.D. 60 (E.D.N.Y. 2005) ...........................................................40

*Elisa W. v. City of New York*,
  82 F.4th 115 (2d Cir. 2023) ........................................................16, 21, 23

*Elisa W. v. City of New York*,
  No. 1:15-cv-05273, 2017 WL 3841868 (S.D.N.Y. Sept. 1, 2017).........20, 22, 23

*Fed. Bur. of Investigation v. Fikre*,
  601 U.S. 234 (2024)..........................................................................21, 29

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*,
  551 U.S. 449 (2007)..............................................................................27

*Floyd v. City of New York*,
  770 F.3d 1051 (2d Cir. 2014) .........................................................36, 37

iv

*Gaddis v. Wyman*,
304 F. Supp. 713 (S.D.N.Y. 1969) ...............................................37, 38

*In re Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MD-2543 (JMF), 2017 WL 5504531 (S.D.N.Y. Nov. 15, 2017) ....33, 36

*Gerstein v. Pugh*,
420 U.S. 103 (1975)............................................................................24

*Int'l Code Council, Inc. v. UpCodes Inc.*,
43 F.4th 46 (2d Cir. 2022) ...............................................................41, 43

*Kelly v. Wyman*,
294 F.Supp. 887 (S.D.N.Y. 1968) ...........................................................38

*Kowalchuck v. Metro. Transp. Auth.*,
94 F.4th 210 (2d Cir. 2024) ...................................................................42

*L.C. by Zimrig v. Olmstead*,
138 F.3d 893 (11th Cir. 1998) ................................................................28

*McGinty v. New York*,
251 F.3d 84 (2d Cir. 2001) ....................................................................42

*Mojias v. Johnson*,
351 F.3d 606 (2d Cir. 2003) ..................................................................43

*In re Nat'l Australia Bank Sec. Litig.*,
No. 03 Civ. 6537 (BSJ), 2006 WL 3844463 (S.D.N.Y. Nov. 8, 2006)........30, 33

*New Jersey Carpenters Health Fund v. Residential Cap., LLC*,
No. 08 CV 8781 (HB), 2010 WL 5222127 (S.D.N.Y. Dec. 22, 2010) .............40

*Norman v. Conn. State Bd. of Parole*,
458 F.2d 497 (2d Cir. 1972) ..................................................................39

*Olmstead v. L.C. ex rel. Zimrig*,
527 U.S. 581 (1999)...........................................................................2, 28

*Pitts v. Terrible Herbst, Inc.*,
653 F.3d 1081 (9th Cir. 2011) ................................................................30

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ..........................................................23, 24

*Rodriguez v. It's Just Lunch, Int'l*,
   No. 07 Civ. 9227 (SHS), 2013 WL 1749590 (S.D.N.Y. April 23,
   2013) ..............................................................................................40

*Rumsfeld v. Forum for Acad. & Inst. Rts., Inc.*,
   547 U.S. 47 (2006) ..........................................................................19

*Salazar v. King*,
   822 F.3d 61 (2d Cir. 2016) .......................................................*passim*

*Seidemann v. Bowen*,
   499 F.3d 119 (2d Cir. 2007) ...........................................................29

*Snider v. Melindez*,
   199 F.3d 108 (2d Cir. 1999) ............................................................42

*Sosna v. Iowa*,
   419 U.S. 393 (1975)..........................................................................21

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953)..........................................................................29

*Weiss v. Regal Collections*,
   385 F.3d 337 (3rd Cir. 2004) ..........................................................31

*XL Specialty Ins. Co. v. Lakian*,
   632 F. App'x 667 (2d Cir. 2015)......................................................34

**Statutes**

28 U.S.C. § 1291 ...................................................................................4

42 U.S.C. § 1396a(a)(3) ........................................................................9

42 U.S.C. § 1396n..................................................................................6

42 U.S.C. § 1983 .................................................................................12

**Other Authorities**

14 N.Y.C.R.R. § 635-10.4 .....................................................................8

Fed. R. Civ. P. 23(d)(1)(B)(iii) ................................................................33

Federal Rule of Civil Procedure 12(b)(1) .........................................5, 19

Federal Rule of Civil Procedure 24(a) ......................................33, 34, 39

HCBS Waiver Application, available at
     https://opwdd.ny.gov/system/files/documents/2021/06/cms-
     approved-7-1-21-amendment.pdf ................................................7, 9

Plaintiffs/Appellants A.H., by her next friend E.H., R.D. by her next friend M.D., J.D. by his next friend D.D., L.P. by her next friend C.P., J.C.M., H.L., A.B., and J.S., on behalf of themselves and all others similarly situated ("Named Plaintiffs"), and Proposed Intervenor Plaintiffs/Appellants E.B., M.W. by his next friend T.D., J.D.C., J.P.S. by his next friend S.S., M.F., O.A., M.Y. by his next friend B.L. and C.H. ("Intervenors," and together with Named Plaintiffs, "Appellants")[1] respectfully submit this memorandum of law in support of their appeal from the February 20, 2024 Opinion and Order (the "Order") (SPA-1)[2] of the United States District Court for the Southern District of New York (Hon. Mary Kay Vyskocil) dismissing Plaintiffs' Amended Class Action Complaint (the "Amended Complaint") for mootness and denying Intervenors' Motion to Intervene.

## PRELIMINARY STATEMENT

Appellants—individuals with developmental disabilities who have been deemed eligible for placement in community-based residences but nonetheless have been confined to institutional settings for many months, if not years—appeal from

---

[1]   Plaintiff-Appellant Disability Rights New York ("DRNY") has filed a separate appeal limited to the District Court's finding that DRNY lacked standing. *See* JA-500. The use of the term "Appellants" herein to refer to Named Plaintiffs and Intervenors is for convenience only and does not impact DRNY's separate appeal. Appellants support reversal of the District Court's holding in the Order that DRNY lacks standing to assert claims in this action, and the reinstatement of DRNY as a plaintiff.

[2]   References to the Special Joint Appendix are to "SPA-__." References to the Joint Appendix are to "JA-__."

the Order *sua sponte* dismissing the Amended Complaint as moot and denying Intervenors' motion to intervene in this putative class action. The Order is inconsistent with Second Circuit mootness precedent governing class actions and was entered by the District Court without providing a full and fair opportunity for the issues to be briefed and heard. Through this action, Appellants, suing on behalf of a putative class of similarly situated individuals, seek to vindicate the ongoing denial of their constitutional and statutory rights. Unnecessary and prolonged institutionalization, as caused by the actions of the New York State Department of Health ("DOH") and the Office for People with Developmental Disabilities ("OPWDD") (collectively, "Appellees"), violates the constitutional and statutory rights of the putative class members, as well as the "integration mandate" set out by the Supreme Court in *Olmstead v. L.C. ex rel. Zimrig*, 527 U.S. 581 (1999).

As detailed in the Amended Complaint, DOH, OPWDD, and their respective commissioners are the State agencies and officers mandated to approve and provide Home and Community Based Services ("HCBS") under the Medicaid Act to which Plaintiffs are entitled. HCBS services may only be provided in community-based settings, not in institutions such as hospitals, nursing homes, and developmental centers. Ignoring that mandate, Appellees continue to violate their obligations to provide community placements and HCBS services to individuals who desperately need them. Instead, Appellees' inability or unwillingness to provide appropriate

2

community-based residences results in Appellants and class members being confined to institutions, despite the fact that Appellees have determined that such individuals are eligible for placement and services.

The District Court's Order dismissing the action on mootness grounds and denying intervention is legally incorrect and ignores the particular circumstances mandating the continuation of this action to rectify Appellees' systemic misconduct and violations of the rights of all putative class members. Throughout this litigation, Appellants and their counsel have acted swiftly in response to the District Court's decisions. Appellants engaged in good faith discovery, responded to a motion to dismiss filed by Appellees (which remained pending as of the Order) and, when it became clear that Appellees sought to moot this case by placing the individual Named Plaintiffs, additional putative class members sought to intervene, both to vindicate their own rights and to protect the interests of the entire putative class.

The District Court's order, however, punishes Appellants for their good faith efforts to move this case forward. The District Court determined, without full briefing or an opportunity to be heard, that Named Plaintiffs' claims were moot and that Intervenors waited too long to seek to join this case. These holdings lack any legal support and are plainly contradicted by the record. Not only does Second Circuit authority provide that Named Plaintiffs' claims are not moot, as set out below, the District Court's rushed and baseless decision to deny intervention as a

3

way to cure the alleged mootness contradicts decades of precedent. Most importantly, the Order further delays the prospect of relief for the more than one thousand New York residents who are facing or will face lengthy and inappropriate institutionalization despite Appellees' determination that they were eligible for and capable of living in a community residence setting. The District Court's decision exacerbates these issues and delays indefinitely any prospect of relief while endorsing Appellees' transparent gamesmanship in picking off Appellants to avoid accountability for their egregious violations of the constitutional and statutory rights of the putative class members.

As set out below, the Order should be reversed, the Amended Complaint should be reinstated, Intervenors should be permitted to join this case as plaintiffs, and the case should proceed expeditiously through discovery toward class certification and resolution.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291, because the District Court's February 20, 2024 Order disposed of all claims and dismissed the action in its entirety. On March 18, 2024, Appellants filed timely notices of appeal from the Order.

## ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court erred by finding that Named Plaintiffs' claims are moot and subject to dismissal under Federal Rule of Civil Procedure 12(b)(1), without any determination as to whether the harm to Named Plaintiffs is capable of repetition yet evading review or the putative class is inherently transitory.

2.    Whether the District Court erred by denying the Proposed Intervenors' motion to intervene filed to preserve claims in response to Appellees' attempts to moot the class claims pre-certification.

3.    Whether the District Court erred by dismissing Named Plaintiffs' class action complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) based solely on pre-motion letters, without affording Named Plaintiffs the opportunity to fully brief the motion or be heard.

## FACTUAL AND PROCEDURAL HISTORY

### A.    Appellants And New York's HCBS Waiver Program

Each Appellant is an individual with a developmental disability who, at the time of the Amended Complaint, was institutionalized despite being determined eligible by Appellees to reside in a community-based setting and receive the appropriate services. Specifically, at the time of the Amended Complaint, each Appellant had been confined for prolonged periods—some for more than three years—in medical, psychiatric, and other institutional settings that severely restrict

5

their movement and activities, including, in some cases, their ability to go outside at all. JA-90-118. Despite their approval for transfer to community-based housing, Appellees failed to provide them with such housing options, resulting in their continued institutional confinement. *Id*. Appellants have suffered, and some continue to suffer harm, including physical and psychological regression, as a consequence of the deprivation of their basic and fundamental rights. However, due to longstanding delays caused by Appellees and their mismanagement of the system responsible for such placements, putative class members languish in institutions, with no guarantee of, or even a timeline for, their placement in an appropriate community residence. These delays are made even more egregious because, as Appellees admit, there are more than 1,200 vacancies in community-based residences across New York state. JA-183 ¶ 65.

Notably, Congress designed a system to eliminate these harms to the extent possible. In 1981, through the federal Medicaid program, Congress created the Home and Community Based Services Waiver program ("HCBS Waiver Program"), which permitted the Secretary of the Department of Health and Human Services to waive certain Medicaid requirements for States receiving federal funding in order to enable the development of specialized community-based programs and services for people with intellectual and developmental disabilities. 42 U.S.C. § 1396n. Its purpose is to support States in complying with federal laws requiring them to provide

6

community-based supports and services to ensure that people with disabilities are not unnecessarily institutionalized. The HCBS Waiver Program in New York is administered by Appellees, under the oversight of their respective commissioners. Under the memorandum of understanding governing the administration and operation of the HCBS Waiver Program, "OPWDD maintains the successful day-to-day operation of the HCBS Waiver Program, while DOH, as the oversight agency, is responsible for evaluating OPWDD's performance in accomplishing its operational and administrative functions." *See* HCBS Waiver Application, page 2, available at https://opwdd.ny.gov/system/files/documents/ 2021/06/cms-approved-7-1-21-amendment.pdf.

To be eligible for the HCBS Waiver Program, individuals with developmental disabilities must be determined by Appellees to require the level of care provided in an intermediate care facility ("ICF"). JA-84-86. In addition, they must be determined—again, by Appellees—to (1) be able to live and reside in the community, either in an individual's or family's home or apartment, or in an OPWDD-registered or managed community-based residence (a "certified residential opportunity" or "CRO"), and (2) require no more intensive services than those that can be offered in a community-based residence. *Id*. In New York, those services include: case management services, habilitation services, prevocational services, supported employment services, environmental modifications, adaptive

7

technologies, respite services, pathways to employment, and community transition services. 14 N.Y.C.R.R. § 635-10.4. Each of the Appellants is an individual determined eligible by OPWDD for the HCBS Waiver Program (and, specifically, each is approved for placement in a CRO) but, as of the date of their complaint, was not placed in a CRO.[3] JA-90-118. Instead, Appellants remained institutionalized and unable to receive any of the HBCS Waiver Program services for which they were approved.

In total, OPWDD licenses or operates 34,070 certified community residence beds throughout New York, consisting of 26,790 beds operated by private service providers and 7,280 beds operated by OPWDD itself. JA-142. Under the current iteration of the HCBS Waiver Program, individual providers of residential services, whether they are private or State-operated, have broad and unfettered discretion to accept or reject any specific individuals for placement in any particular CRO. JA-117-19. Indeed, even facilities operated directly by OPWDD are not required to accept any individuals for placement, regardless of their level of need, and even after individuals have been repeatedly rejected by private service providers. JA-119. At

---

[3] Instead of living in inappropriate institutional settings subject to significant restraints on most types of activities and freedoms, Appellants were approved by Defendants to reside in the community in supportive housing settings, often referred to as "group homes," where they can live with their peers in an integrated setting tailored to their needs and abilities and with appropriate support services. These are the "certified residential opportunities" or "CROs" referred to throughout this brief and in the Amended Complaint.

the same time, Appellees artificially limit and manipulate the funds available to CRO operators by employing opaque, inflexible, and imprecise funding mechanisms that disincentivize CRO operators from accepting individuals who present with higher levels of need and additional funding support. As a result of this approach, CRO operators are incentivized to offer services to individuals who are relatively less challenging to service, while individuals with even moderately more specific needs, including Appellants, suffer egregious delays waiting for placement in a CRO because of their actual or perceived higher needs. JA-115-16.

Theoretically, individuals denied placement with reasonable promptness may seek an administrative fair hearing from Appellee DOH. 42 U.S.C. § 1396a(a)(3). Fair hearings are mandated to provide any individuals denied any service provided under Medicaid, or "who are not given the choice of home and community-based services as an alternative to the institutional care," with an opportunity to seek review of that denial. *See* HCBS Waiver Application, page 219; JA-83-84, 87. However, individuals waiting for community placements and services are given no notice of their right to a hearing, which in and of itself contributes to the continued institutionalization of individuals who have been deemed eligible to live in the community. JA-114-15. Moreover, those hearings that do occur are subject to systemic delays, resulting in further prolonged institutionalization.

9

Appellees' mismanagement of the HCBS Waiver Program is the direct cause of Appellants' prolonged and unnecessary institutionalization. JA-118-21. Indeed, at the time of the Amended Complaint, each Appellant had waited at least *nine months* for placement in a CRO, with some waiting as long as *six years*, which left them to languish in hospitals, nursing homes and ICFs for an unreasonably excessive period of time. JA-90-118. Moreover, despite this inexcusable failure, Appellees have also failed to provide Appellants with hearings to vindicate their constitutional right to access appropriate services in the most integrated setting available. *Id*.

## B. Procedural History

### 1. *Plaintiffs' Complaint, Amended Complaint, And Motion For A Preliminary Injunction*

After Plaintiffs filed their initial complaint, the parties exchanged pre-motion letters regarding Defendants' anticipated motion to dismiss. As part of that exchange, Plaintiffs advised the District Court of their intent to file an Amended Complaint as a matter of right. The Amended Complaint was filed on October 14, 2022, identifying the Named Plaintiffs in this case. JA-74. On October 20, 2022, just six days after the Amended Complaint was filed, Named Plaintiffs also sought a preliminary injunction to require timely placement of all Named Plaintiffs in CROs.

In response to the Amended Complaint and motion for a preliminary injunction, Defendants filed a pre-motion letter regarding a motion to dismiss the

Amended Complaint in part. Defendants did not seek to dismiss Named Plaintiffs' claims for violation of the Americans with Disabilities Act ("ADA") or certain of the claims for violation of the Medicaid Act. JA-187. Defendants also opposed Named Plaintiffs' motion for a preliminary injunction. JA-211.

The Court heard argument and ultimately denied Named Plaintiffs' motion for a preliminary injunction, despite noting that "it is not reasonable for Defendants to fail indefinitely to find placements for Plaintiffs." JA-212. Although it denied a preliminary injunction, the District Court required Appellees to file an affidavit by January 30, 2023 regarding their efforts to place Named Plaintiffs in CROs, and emphasized the severity of the harms at issue and deficiencies in the State's HCBS Waiver Program. *Id.*

### 2. *Appellees Move To Dismiss The Amended Complaint In Part And Seek To Moot Named Plaintiffs' Claims*

Following the denial of Named Plaintiffs' motion for a preliminary injunction, Defendants filed their motion to dismiss in part, seeking full dismissal only of the Third, Eighth, and Ninth causes of action and seeking partial dismissal of others. JA-209. Specifically, the motion sought dismissal of Plaintiffs' 14th Amendment Due Process claims and one of Plaintiffs' three Medicaid Act claims. JA-199, 202. Defendants did not move to dismiss two other Medicaid Act claims or Plaintiffs' claims under the ADA or the Rehabilitation Act. JA-209. Defendants also argued that all claims should be dismissed as to Defendants OPWDD and DOH, and that

11

Plaintiffs claims under 42 U.S.C. § 1983 should be dismissed as to Defendant Bassett. JA-204-06. Finally, Defendants argued that Plaintiff DRNY should be dismissed for lack of standing. JA-207. Named Plaintiffs opposed the motion. SPA-7.

While the partial motion to dismiss was pending, Appellees began a concerted effort to moot Named Plaintiffs' claims and avoid any class-wide adjudication. Specifically, as reflected in the affidavit Appellees later filed at the District Court's direction, despite its extended failure to do so prior to the filing of this action, Appellees quickly found CRO placements for four Named Plaintiffs and renewed their efforts to seek immediate placements for the other four. JA-442. Although certain of the Named Plaintiffs were placed, Appellees did not seek dismissal of their claims at that time based on any assertion of mootness. Instead, while Appellees' motion to dismiss in part remained pending, the parties began discovery. While the parties submitted proposed discovery and case management orders to the District Court in January 2023, no discovery plan or case management order has been entered by the Court.

The parties' first discovery dispute arose in March 2023, when Appellees refused to produce certain basic categories of documents relevant to Named Plaintiffs' claims and that Named Plaintiffs considered necessary before moving for class certification. JA-404. Because the dispute had not been resolved by July

2023—more than four months after it was submitted to the Court—Named Plaintiffs requested referral to a Magistrate Judge for the supervision of discovery, to which Defendants objected. JA-405. The District Court denied the request to refer the case, but ordered Appellees to produce "non-burdensome discovery on Defendants' general practices relating to individuals in institutional settings who have been deemed eligible for placements in residential settings insofar as that information will illuminate whether Plaintiffs can satisfy the prerequisites of Rule 23 of the Federal Rules of Civil Procedure." JA-406. The parties were instructed to "work together in good faith" to negotiate the scope of discovery. JA-406-07.

Initially, Appellees cooperated with Appellants to move discovery forward. Specifically, Appellees agreed to produce information related to each Named Plaintiff and the Intervenors, principally including documents and communications related to Appellees' efforts to place them in CROs, regardless of whether each individual had received placement in a CRO. JA_281. Appellees agreed to produce this information, which was necessary to support the criteria for class certification under Rule 23, by the end of October 2023. However, once the final Named Plaintiff—but not the Intervenors—had been placed, Appellees reversed course, reneged on the parties' agreement (and their agreement to abide by the District Court's instructions), and sought dismissal of this action by letter to the District Court. JA-441. Appellees produced no additional documents between September

13

2023 and January 2024 when the District Court dismissed this action. Appellees' reversal was particularly harmful to Appellants' ability to move for class certification given that the parties also had agreed to defer production of other categories of documents relevant to class certification, including all electronically stored information ("ESI") and in particular, email communications involving custodians of Appellees, until after Appellants reviewed the agreed-upon documents, in order to lessen any burden of production and review. JA-445.

### 3. *Appellants' Motion To Intervene Based On Defendants' Attempt To Moot Named Plaintiffs' Claims*

During the entire period that discovery was ongoing, including during the four months this discovery dispute remained unresolved, Appellees continued their efforts to moot Named Plaintiffs' claims. By July 2023—nine months after the filing of the Amended Complaint—all but one Named Plaintiffs had been placed into a CRO; the single Named Plaintiff that had not been placed in the CRO had already waited over two and a half years for a placement. JA-327-28.

In order to avoid the delays associated with motion practice related to alleged mootness, and because Named Plaintiffs' counsel had become aware of dozens of additional putative class members suffering greatly because of their unnecessary institutionalization, eight individuals filed a motion to intervene in this action. At the time, each of the Intervenors had been institutionalized for at least nine months despite being determined eligible for placement in a CRO, with one Intervenor

14

waiting over four years. JA-351-53. The claims in the Intervenors' Complaint mirrored those of the Named Plaintiffs. JA-336-39. Moreover, the intervention motion noted that adding additional plaintiffs had become necessary because Appellees had demonstrated their intent to use the delay they caused by failing to provide discovery to their advantage, to try to moot the claims of the Named Plaintiffs. JA-344 at ¶¶ 4-6.

### 4. *Appellees Delay Discovery And Resolution Of The Case To Moot All Plaintiffs' Claims*

While the motion to intervene was pending, Appellees began to execute the same playbook as to the Intervenors. After the briefing on the motion to intervene was complete, Defendants successfully placed two of the eight proposed intervenor plaintiffs and increased their efforts to find placements for the remainder. At the same time, Appellees continued to resist producing discovery sought by Appellants to support their expected motion for class certification, as Appellees produced no additional discovery after September 2023. JA-444. In response, instead of addressing their discovery deficiencies, Appellees wrote a pre-motion letter to the District Court to announce that (1) all Named Plaintiffs had been placed in CROs, and (2) as a result, their claims were moot and the case should be dismissed. JA-441.

Appellants' response, governed by the District Court's Individual Practices in Civil Cases, was limited to three pages. Appellants explained that (1) Appellees letter was not permitted under those same rules, (2) Named Plaintiffs' claims were

not moot, and (3) even if their claims were moot, relevant law required an opportunity to implead or intervene new plaintiffs. JA-444. Appellees then filed an unpermitted reply letter reiterating their position. JA-494.

In connection with this new dismissal bid, Appellants cited this Court's recent decision in *Elisa W. v. City of New York*, which held that when the class at issue is "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires," the "mooting" of any specific named plaintiff's claims does not moot the entire action. 82 F.4th 115, 122 n.2 (2d Cir. 2023); JA-445. However, due to the District Court's rules, Appellants did not have the opportunity fully to brief or argue this position or any other in their response letter. Instead, they expected to be able to present full arguments when Appellees' application was briefed.

Without notice to the parties, the District Court construed the pre-motion letters as an additional motion to dismiss, and dismissed Named Plaintiffs' claims as moot. SPA-1. Specifically, the District Court held that because all Named Plaintiffs had received placement in a CRO, "all of the individual plaintiffs have received precisely the outcome they sought when they brought this lawsuit, and there is no longer a live case or controversy between the individual plaintiffs and the defendants in this action." SPA-14. The District Court did not consider, and Appellants were given no opportunity to brief, whether Plaintiffs' claims were moot, or if any

exceptions to the mootness doctrine applied. Instead, the District Court simply dismissed the claims.

In the same order, the District Court denied Intervenors' motion to intervene. SPA-15. The District Court ruled that intervention was inappropriate, despite precedent from this Court that absent class members have a right to intervene in a putative class action impacting their rights. SPA-20. In denying the motion, the District Court placed enormous weight on Named Plaintiffs' failure to file a motion for class certification, notwithstanding that Appellees had failed to produce discovery relevant to class certification and that Appellees' original motion to dismiss, which would determine those claims subject to any class certification motion, remained pending. *See e.g.*, SPA-16. Instead, the District Court penalized Appellants for what it viewed as delay in seeking intervention—again, caused by Appellees' failure to comply with its fundamental discovery obligations. SPA-18.

Appellants' timely appeal followed.

## **SUMMARY OF ARGUMENT**

The District Court erred in dismissing the Amended Complaint and denying the pending motion to intervene. While the record before the District Court was sparse—because it did not permit full briefing on a dispositive motion—this Court should reverse the dismissal of Appellants' claims and grant the motion to intervene.

17

*First*, the District Court was wrong to conclude that Named Plaintiffs' claims were moot. The District Court did not consider whether any exception to the general mootness rule applied to any of Named Plaintiffs' claims. Here, the claims are not moot because (i) the putative class is inherently transitory, (ii) Named Plaintiffs' claims are capable of repetition, yet would evade review if deemed moot, and (iii) Appellees voluntarily ceased their unlawful activities as to Named Plaintiffs.

*Second*, the District Court failed to apply clearly established precedent permitting intervention as an appropriate way to protect the interests of the putative class, particularly in the face of Appellees' attempts to moot the class claims. Absent class members have a long-established interest and right to intervene in a putative class action. Even under basic intervention standards, the Intervenors should have been permitted to intervene as of right or, at minimum, by permission. The District Court was wrong in holding that the motion to intervene was untimely and that Intervenors have no interest in this case.

*Third*, Appellants were not given the proper opportunity to brief these issues in the District Court. Contrary to recent precedent, the District Court granted dismissal on the basis of three-page pre-motion letters, rather than permitting Appellants to fully present their arguments. This fact alone merits reversal, although this Court should resolve the mootness and intervention issues to prevent further delay in this already two-year-old case. However, to the extent this Court finds that

18

additional factual development regarding the nature of the class and the claims asserted in determining the applicability of the exceptions to the mootness doctrine is required, a remand to the District Court would be appropriate.

## STANDARD OF REVIEW

This Court reviews a District Court's Rule 12(b)(1) dismissal *de novo*. *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). Specifically, the Court considers whether the plaintiffs "allege[d] facts that affirmatively and plausibly suggest" that they had standing to sue, construing the complaint in their favor and accepting as true all material factual allegations contained therein. *Id.* (internal quotation marks omitted); *see also Rumsfeld v. Forum for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").

## ARGUMENT

### I. THIS ACTION IS NOT MOOT DESPITE THE PLACEMENT OF THE NAMED PLAINTIFFS IN COMMUNITY SETTINGS

After causing Appellants to languish in institutional settings without placement for months—or, in some cases, years—on end, following the filing of this action and the District Court's order on the preliminary injunction, Appellees expedited their efforts to place Named Plaintiffs and moot this case. It is readily apparent that the placements for Named Plaintiffs (and Intervenors) would not have occurred when they did but for this action and Appellees' redoubled efforts to place

19

them after the case was filed. But those efforts, while laudable, should not be—and are not—sufficient to moot this case and avoid judicial judgment of Appellees' wrongful conduct, because the putative class is inherently transitory and because each individual Named Plaintiffs' claims is not moot.

Questions about Named Plaintiffs' claims and mootness "[are] appropriately litigated in the context of class certification, not by piecemeal consideration of mootness arguments attacking the standing of individual plaintiffs as of particular points in the course of the pretrial proceedings." *Elisa W. v. City of New York*, No. 1:15-cv-05273, 2017 WL 3841868, at *2 (S.D.N.Y. Sept. 1, 2017). Here, however, the District Court varied from that path and granted Appellees' motion to dismiss without sufficient briefing or argument as to why Named Plaintiffs' claims are not moot.

The record supports reversal of the District Court's substantive mootness determination. Appellees sought dismissal of Named Plaintiffs' claims because they have been discharged from their institutional confinement and placed into CROs and are now receiving HCBS Waiver Program services. Appellees wrongly argue that Named Plaintiffs' claims for prospective injunctive relief are moot because they will not be affected by the relief sought in this action. That is incorrect. While the mooting of a named plaintiff's claim can result in the entire action becoming moot, this Court and the Supreme Court recognize that notwithstanding any such mootness,

20

a District Court still has jurisdiction where (1) the claims are inherently transitory, *Sosna v. Iowa*, 419 U.S. 393, 399-400 (1975); or (2) the individual Named Plaintiffs' claims are not moot, both because the claims are capable of repetition, yet evading judicial review, *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994), and because any allegation of mootness was caused by a defendant's voluntary cessation of the offending conduct, *Fed. Bur. of Investigation v. Fikre*, 601 U.S. 234, 241 (2024). Each exception applies here.[4]

## A. The "Inherently Transitory" Exception To Mootness Applies

A putative class is "inherently transitory," and claims asserted by the putative class representatives will not be moot, when "the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *See Elisa W. v. City of New York*, 82 F.4th 115, 122 n.2 (2d Cir. 2023) (citing *Comer*, 37 F.3d at 799). In such cases, the full action does not become moot, and, instead, each claim "relates back" to the filing of the original complaint. *See id.*; *see also Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016) (finding a putative class of student loan borrowers "inherently transitory" because applications to discharge loans through an administrative process could

---

[4] Any argument that Appellants waived any of the mootness exceptions has no merit. As discussed herein, *see infra* at 41, the District Court, in contravention of settled precedent, denied Appellants the opportunity fully to brief these issues. Appellants should not be limited to the arguments they could fit in a three-page letter that was itself an insufficient opportunity to be heard.

moot a plaintiff's claims in six months before court review) (citing *Comer*, 37 F.3d at 799). The case is not moot, despite the mootness of the individual's claims, "if: '(1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons suffering the deprivation complained of in the complaint.'" *Salazar*, 822 F.3d at 73 (quoting *Olson v. Brown*, 594 F.3d 577, 582 (7th Cir. 2010)).

The determination that the claims of a particular plaintiff or putative class are "inherently transitory" is fact-specific, as multiple decisions from this Court make clear. For example, in Elisa W., a putative class of foster care children sued New York City and New York State for, among other things, deficiencies in administering and overseeing New York City's foster care system, including the failure to timely place children in permanent residences. During the pendency of the action, defendants filed a motion for partial summary judgment, claiming six of the named plaintiffs' claims were moot because the named plaintiffs had left the foster care system prior to obtaining class certification. *Elisa W. v. City of New York*, No. 1:15-cv-05273, 2017 WL 3841868, at *1 (S.D.N.Y. Sept. 1, 2017). In *Elisa W.*, the District Court held that the "putative class of children in [foster care] has every hallmark of an inherently transitory population" including because each child could "enter and leave [foster care] multiple times during their lives because of factors

22

entirely outside of their control." *Id*. at *2. This Court agreed. *Elisa W.*, 82 F.4th at 122 n.2.

In *Elisa W.*, this Court relied on *Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994), which also is analogous. In *Comer*, a putative plaintiff class comprised of minority residents of public housing sued the City of Buffalo alleging racially discriminatory housing policies and practices. *Id*. at 784. This Court noted that the class claims could not be mooted by a particular named plaintiff's departure from the public housing at issue, because the population of public housing projects is inherently transitory. *Id*. at 798-99. This Court further noted that because the population of public housing was constantly changing, any named plaintiff's changed circumstance should not moot the claims of the class as a whole. *Id*. at 799-801.

As a further example, in *Robidoux v. Celani,* 987 F.2d 931 (2d Cir. 1993), this Court agreed that a putative class action plaintiff's claims were inherently transitory because the state administrative agency at issue would "almost always be able to process a delayed application before a plaintiff can obtain relief through litigation." *Id.* at 939. In factual circumstances nearly identical to those presented here, this Court specifically anticipated that individual class representatives could have their claims mooted during litigation, but still remain the named plaintiff through class certification and final resolution of the action. Specifically, the *Robidoux* court held

23

that "[e]ven where the class is not certified until after the claims of the individual class representatives have become moot, certification may be deemed to relate back to the filing of the complaint in order to avoid mooting the entire controversy." *Id*. "The fact that the plaintiffs received their unlawfully delayed benefits after the lawsuit was commenced did not mean that the action thereby became moot." *Id*. at 938.

Just as in *Elisa W.*, *Comer*, and *Robidoux*, Named Plaintiffs' claims are inherently transitory because "it is by no means certain that any given individual, named as plaintiff, would be [institutionalized] long enough for a district judge to certify the class." *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975). In the present case, Named Plaintiffs were placed in CROs even before the District Court ruled on the motion to dismiss or signed a case management order.

The combination of Appellees' efforts to moot Named Plaintiffs' claims, Appellees' refusal to provide discovery needed for class certification, and the District Court's timetable for making decisions effectively denied Plaintiffs any opportunity to move for certification on their inherently transitory class-wide claims. Moreover, by its design, the OPWDD system and CRO placements are intended to be transitory. Once certified as eligible for a CRO and participation in the HCBS Waiver Program, the members of the putative class of individuals with disabilities

are supposed to leave the institutional setting for a permanent community residence. The timing of their placement entirely is controlled by Appellees.

Appellees' arguments in opposition to Appellants' motion for a preliminary injunction in the District Court confirmed that the putative class here is inherently transitory. In their opposition, Appellees confirmed that for individuals who have been placed in community residences, "[t]he median wait time broken down by designated level of housing need was: 5.3 months (23 weeks) for Emergency Need; 6.7 month (29 weeks) for Substantial Need; and 5.3 month (23 weeks) for Current Need." JA-180 at ¶ 57. Even without more, these processing times are similar to the six-month processing time this Court found sufficient to support an inherently transitory class in *Salazar*. *Salazar*, 822 F.3d at 73-75 (wait time of six months insufficient for court to address class certification).

Moreover, Appellees also stated that "[t]he average wait time for individuals designated as Emergency Need (a designation that applied to several Named Plaintiffs and Intervenors) who had not secured placement as October 31, 2021 was approximately 756 days. In addition, as of October 31, 2021, approximately 63 individuals designated as Emergency Need had been waiting five years or more for placements." JA-181 at ¶ 58 n.5. While those wait times could theoretically allow a named plaintiff to litigate their claims to completion, the placements made in this action demonstrate that Appellees can, and do, place individuals expeditiously when

25

they need to, in order to try to moot meritorious class claims. Thus, while Appellees' concessions in the District Court provide more than sufficient basis to find that the class alleged is inherently transitory, Appellees' complete control over whether it can moot an individual's claim further supports the finding that this class is inherently transitory.

There can also be no doubt that the putative class satisfies the requirement that there be "a constant class of persons suffering the deprivation complained of in the complaint.'" *Salazar*, 822 F.3d at 73. Appellees previously have stated that they oversee "the largest certified residential housing system in the country" with "approximately 37,528 people" in OPWDD-administered residences. JA-166 ¶ 6. Appellees also claims that they "serve[] approximately 1,000 new individuals in certified residential settings each year." *Id*. Even by Appellees' own accounting, absent systemic and wholesale changes to their policies and practices, hundreds or even thousands of people will continue to be harmed in the same way Named Plaintiffs and Intervenors are or have been.

Thus, contrary to the District Court's findings below, the "inherently transitory" exception to mootness applies here, and Named Plaintiffs' claims are not moot.

**B.** **Named Plaintiffs' Claims Are Capable Of Repetition, Yet Evading Review**

The mootness exception for "inherently transitory" claims, as applicable here, is unique to class actions. However, even if this were not a class action, Named Plaintiffs' claims are also not moot because they are "capable of repetition, yet evading review." A claim is capable of repetition, yet evading review "where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Generally, the analysis for this exception to mootness is similar to that used to determine if claims are "inherently transitory" except that, instead of showing that there will likely be a "constant class of persons" harmed as alleged, the plaintiff must show that the claim is capable of repetition to that individual plaintiff. *Salazar*, 822 F.3d at 73 n.8 (citing Newberg on Class Actions § 2:13 (5th ed. 2014)).

This exception applies here because it is quite possible, if not likely, that some Named Plaintiffs will, for one reason or another, be unnecessarily institutionalized again at some point. Indeed, at least one Named Plaintiffs has already cycled in and out of institutional settings. JA-101 at ¶ 190. Plaintiff L.P., for example, prior to her admission to a psychiatric unit in Schenectady, New York, had been discharged

27

by her former guardian from a community residence located in Schoharix County operated by a voluntary agency licensed by OPWDD. JA-101 at ¶ 190. Accordingly, if Appellants are unable to adjudicate their claims, they may find themselves in an endless cycle of prolonged re-institutionalization where their claims would not be reviewed. As a result, this presents a quintessential claim capable of repetition, yet evading review if deemed moot.

The Supreme Court's decision in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) is analogous. In that case, the Supreme Court held that when a patient with a disability files a lawsuit challenging her confinement in a segregated institution, her post-complaint transfer to a community-based program will not moot the action. *Id*. at 594 n.6. In *Olmstead*, both the District Court and the Court of Appeals concluded that despite being placed in community-based programs, the suit falls under the exception for cases that are "capable of repetition, yet evading review." *Id*. Particularly similar to the case here, at least one of the *Olmstead* plaintiffs' claims were "capable of repetition, yet evading review" because she had been placed in a community center following a court order. *L.C. by Zimrig v. Olmstead*, 138 F.3d 893, 895 n. 2 (11th Cir. 1998) (on appeal from the district court's summary judgment order). Here, the District Court similarly ordered Appellees to focus their efforts on finding placements to eliminate the ongoing harm to Named Plaintiffs. Seeking to evade all accountability for having facilitated the very delay

that has robbed Plaintiffs of their right to live in less-restrictive community-based residences, Appellees use that order, and their resulting compliance, to argue Named Plaintiffs' claims for class-wide relief are moot. If accepted, such an argument would eviscerate the class-action mootness exceptions designed to protect claims of inherently transitory classes, as well as plaintiffs whose harms and claims are capable of repetition, yet evading review.

### C. Appellees Have Voluntarily Ceased Their Unlawful Actions

Moreover, the claims here are not moot for the separate reason that Appellees cannot capitalize on their own voluntary cessation of illegal conduct to moot Appellants' claims. The Supreme Court repeatedly has stated that "a defendant's 'voluntary cessation of a challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'" *Fikre*, 601 U.S. at 241 (2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *see also United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953). As this Court has stated, "a party 'claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Seidemann v. Bowen*, 499 F.3d 119, 128 (2d Cir. 2007) (quoting *N.Y. Pub. Interest Research Grp. v. Whitman*, 321 F.3d 316, 327 (2d Cir. 2003)).

29

Appellees did not make any effort in the District Court to establish that their voluntary cessation of unreasonable delays with respect to Appellants will do anything to stop their unlawful and unconstitutional policies with respect to others in the putative class. Appellees do not—because they cannot—make that assertion because hundreds, if not thousands, of individuals approved for CRO placement and HCBS Waiver Program services remain institutionalized, notwithstanding Appellees' obligations to provide placements and HCBS services. Thus, the Court also should find that Appellees' decision to cease their unlawful policies as applied to Appellants does nothing to moot this case.

## D. Appellants Did Not Have A Meaningful Opportunity To Seek Class Certification

Appellees argued below and the District Court appeared to hold that because Appellants had not moved for class certification, no exceptions to mootness apply. That is not the law. A long line of cases have held that even if the plaintiffs have not yet sought class certification, mootness exceptions still prevent dismissal of putative class actions. *See, e.g.*, *In re Nat'l Australia Bank Sec. Litig.*, No. 03 Civ. 6537 (BSJ), 2006 WL 3844463, at *2 (S.D.N.Y. Nov. 8, 2006) (named plaintiffs claims are not moot where plaintiff "has not yet had a reasonable opportunity to move for class certification"); *Bellin v. Zucker*, 457 F. Supp. 3d 414, 419-20 (S.D.N.Y. 2020) (it is "not an absolute requirement" that plaintiffs have a motion for class certification pending in order for the relation-back doctrine to apply); *Pitts v.*

30

*Terrible Herbst, Inc.*, 653 F.3d 1081, 1090-91 (9th Cir. 2011) (reversing district court's finding that employee could no longer file timely motion to certify class because "allowing a class action to become moot 'simply because the defendant has sought to "buy off" the individual private claims of the named plaintiffs' before the named plaintiffs have a chance to file a motion for class certification would [] contravene Rule 23's core concern[.]"); *see also Weiss v. Regal Collections*, 385 F.3d 337, 347-48 (3rd Cir. 2004) (permitting relation back notwithstanding that motion for class certification was not yet filed).

These cases are directly applicable here, where the District Court failed to resolve defendants' first motion to dismiss and Appellees failed to produce relevant discovery, both of which delayed Appellants' class certification motion.

First, the District Court failed to resolve Appellees' original motion to dismiss. That motion sought dismissal of some of Appellants' claims in full and sought dismissal of DOH and its Commissioner in its entirety. JA-187. The motion, if granted, would have changed materially the common legal issues relevant to any class certification motion and, by extension, the relief due to the class, as well as details relevant to the analysis of commonality, typicality, and representativeness under Rule 23. For example, the Amended Complaint alleges both statutory claims regarding Appellees' implementation of the HCBS Waiver Program and CRO placements, but also alleges constitutional claims about Appellants'

31

institutionalization.  If the latter claims are relevant to class certification, the relief to which the class is entitled may well be broader than the relief on the statutory claims alone.

Moreover, despite this uncertainty, Appellants actively were working toward class certification, as evidenced by the discovery issues brought to the Court, and needed fact discovery for their experts to address certification issues appropriately. JA-444; *supra* at 12-14.  However, Appellees reversed course on the parties' agreed-upon discovery schedule and production after they had successfully placed each Named Plaintiff and could claim mootness.  *Id*.  Appellees cannot use a delay they manufactured by slow-walking discovery to claim an entitlement to avoid future litigation.  In short, because of these extenuating circumstances, any impact the lack of a pending class certification motion has on the mootness analysis—and it should have none—should be excused due to Appellees' conduct.

## II.    THE DISTRICT COURT ERRED BY DENYING INTERVENTION

### A.    <u>Members Of The Putative Class Are Permitted To Intervene</u>

Proposed Intervenors satisfy all requirements for intervention.  Therefore, even if the original Named Plaintiffs' claims were moot, which they are not, the case should not be dismissed because Intervenors can adequately represent the interests of the class and substitute as new class representatives.  Accordingly, this Court should reverse the District Court's decision that intervention was improper here.

32

It is well-settled that "courts not only may, but should, respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative." *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463, at *3 (cleaned up). "[W]hen a certified or putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests." *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2017 WL 5504531, at *1 (S.D.N.Y. Nov. 15, 2017).

The principle that absent class members may intervene in a class action to protect their interests and those of their fellow absent class members is embedded in Rule 23. *See* Fed. R. Civ. P. 23(d)(1)(B)(iii) ("[T]he court may issue orders that require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of the members' opportunity to signify whether they consider the representation fair and adequate, *to intervene and present claims or defenses,* or to otherwise come into the action[.]") (emphasis added); *see also Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y. 1993) (intervention by class members should be allowed under Federal Rule of Civil Procedure 24(a) "as of right" whenever it appears that the named representative cannot adequately represent the interests of the class).

33

Moreover, this Court specifically has recognized that, in certain cases, intervention is necessary and appropriate "to step in to save the claims" of a putative class action where the named plaintiffs' claims are moot. *Comer*, 37 F.3d at 801 (citing *Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 430-31 (1976) and *Baxter v. Palmigiano*, 425 U.S. 308, 310 n.1 (1976)). Thus, the District Court should have granted Intervenors' motion simply because it was brought by the members of a putative class who sought to intervene into the class action. The District Court's decision to deny intervention should be reversed.

### B. <u>Intervention Was Otherwise Appropriate</u>

The District Court also denied the motion to intervene as of right and by permission for reasons unrelated to the putative class. These holdings also were erroneous and should be reversed as Intervenors satisfy all procedural requirements for their motion to be granted. Rule 24(a)(2) provides that a court "must grant an applicant's motion to intervene . . . if (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *City of Syracuse v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 1:20-cv-06885-GHW, 2021 WL 1051625, at *4 (S.D.N.Y. Mar. 19, 2021); *XL*

*Specialty Ins. Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015) (same). The District Court's determinations that Intervenors' motion was untimely, and that Intervenors had no impaired interest, are wrong and should be reversed.

### 1. *Intervenors' Motion Was Timely*

In denying intervention both "as of right and by permission," SPA-15, the District Court principally denied intervention as untimely. Specifically, the District Court held that because Plaintiffs' counsel brought the intervention motion in an effort to save their proposed class action, and because Plaintiffs' counsel started "pursuing adequate class substitutions" when they "became aware of the potential need to fill a class representative gap after OPWDD placed several of the Plaintiffs into community residences" SPA-15, the motion to intervene was not timely.

The District Court's sole finding with respect to timeliness was that Named Plaintiffs' counsel filed the intervention motion more than a year after the lawsuit was filed and "long after it was apparent that Defendants would continue their efforts to place plaintiffs, and, as such, plaintiffs would receive the very relief they sought, and their claims would become moot." SPA-18-19. As discussed above, the District Court is wrong that placements would moot Named Plaintiffs' claims. But Intervenors sought to intervene precisely to avoid this mootness dispute. For that reason, the motion to intervene was filed in July 2023, more than six months before the last original Named Plaintiff was placed in a community residence. As a result,

Intervenors' motion was timely and sought relief well before intervention became necessary to "save the claims." *Comer*, 37 F.3d at 801. Granting the intervention motion would have prevented the mooting of the class claims at all, which is precisely the type of situation where courts in this circuit have instructed that intervention "is appropriate, even required, to protect class interests." *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *1.

Moreover, Intervenors filed a motion to intervene before a class certification motion was filed and while the motion to dismiss was still pending. The motion was filed expeditiously, as soon as it became clear that (1) Appellees were attempting to move all Named Plaintiffs into community residences, and (2) no order regarding discovery or the pending motion to dismiss, either of which would have moved the case toward class certification, was forthcoming.

The sole case cited by the District Court is inapposite. In *Floyd v. City of New York*, 770 F.3d 1051 (2d Cir. 2014), this Court denied intervention in an action challenging the city's stop and frisk policy, where the actual parties to the litigation, including a newly-elected mayoral administration, had agreed to a settlement resolving claims on behalf of a certified class. *Id.* at 1054-55. There, because the class was certified years earlier, the Court denied intervention because the proposed intervenors in that case knew or should have known that their interests were at stake well before filing their motion. *Id.* at 1058. Specifically, by the time the intervention

36

motion was filed in *Floyd*, the case had been going on for years—plaintiffs' class certification motion had already been decided, a preliminary injunction had been issued, summary judgment was decided, there was a bench trial, extensive briefing on remedies, and a settlement was already negotiated. *Id.*[5] The proposed intervenors there moved after liability and remedies had been adjudged, the district court noted, which "resembles post-judgment intervention, which is generally disfavored[.]" *Id.* at 1059. This case bears no relation to *Floyd*.

A more analogous situation occurred in *Gaddis v. Wyman*, 304 F. Supp. 713 (S.D.N.Y. 1969). In that case, the District Court held that where named plaintiff received relief from the department of social services during the pendency of the case, "intervention in this class action by persons properly members of the class should be permitted to protect the interests of the class and the intervenor applicants who are no longer 'adequately represented by existing parties." *Id.* at 716. In so holding, the court rejected the defendant's argument that the court never determined that a class in fact existed. *Id.* at 715. The court noted that "[a] holding that an action commenced as a class action retains that character until a court finds otherwise[.]" *Id.* Because "no class determination ha[d] been made at the time that

---

[5]    Notably, the proposed intervenors were not seeking to represent the interests of a mooted class of plaintiffs, but rather to step into the shoes of the defendants in that action, who the proposed intervenors claimed were not adequately representing their interests. *Id.* at 1058-59. Because of the late stage of the litigation, the Second Circuit found that granting intervention would prejudice the existing parties.

the motion for intervention was made, a class action must be presumed to have existed at the time of the filing of the motion for intervention." *Id.* Accordingly, the court permitted intervention in the action to protect the interest of the putative class. *See also Kelly v. Wyman*, 294 F.Supp. 887, 890 (S.D.N.Y. 1968) (permitting intervention because "dismissal is not appropriate when the individuals purport to represent a class.").

Here too, contrary to the District Court's finding, Intervenors' motion was timely. In response to the District Court's order denying Named Plaintiffs' motion for a preliminary injunction, Defendants discharged several Named Plaintiffs from institutions and placed them in a community setting where they now reside in CROs. Intervenors brought the motion to intervene after diligently pursuing adequate class substitutions, investigating their claims, and proceeding with discovery in the action, and long before the final original Named Plaintiff was placed in a CRO in September 2023. Under the circumstances, finding eight new substitute class representatives in a period of five months is not dilatory, and this factor should be weighed in favor of intervention, not against it.

## 2. *Intervenors Have A Direct, Legally Cognizable Interest In The Claims Of The Named Plaintiffs*

The District Court also erred in holding that the Proposed Intervenor Plaintiffs do not have a direct, legally cognizable interests in the claims of the individual plaintiffs named in the Amended Complaint. SPA-19. The District Court so held

exclusively because no class certification motion was pending or decided and, thus, "[i]t makes no difference to [] one of the proposed intervenors, that Plaintiff [] has been placed and her claims are moot." *Id.* However, this finding is belied by the weight of the relevant law, which holds that proposed intervenors have a direct, legally cognizable interest in the claims of the individual plaintiffs when their interest in the subject matter arises from the same course of conduct and asserts the same legal theories as the current plaintiffs. *See, e.g., In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 297 F.R.D. 90, 97 (S.D.N.Y. 2013) ("In the class action context, the second and third prongs of the Rule 24(a)(2) inquiry are satisfied by the very nature of Rule 23 representative litigation." (citations omitted)).

Moreover, the Intervenors, just like Named Plaintiffs, all asserted their desire to serve as class representatives in order to adjudicate the claims of all similarly situated individuals. They were not solely interested in their individual claims. Because absent class members are typically situated such that they, by definition, have rights in common with the existing plaintiffs that will be impaired absent intervention, courts routinely allow intervention in these circumstances. *See, e.g.*, *Diduck,* 149 F.R.D. at 58 ("Intervention should be liberally allowed, especially since members of a class are normally bound by the judgment in the class action." (cleaned up)); *Norman v. Conn. State Bd. of Parole*, 458 F.2d 497, 499 (2d Cir. 1972) (remanding to allow 30 days for another member of the putative class to intervene

where claims of sole lead plaintiff were moot); *Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227 (SHS), 2013 WL 1749590, at *1, *3 (S.D.N.Y. April 23, 2013) (allowing intervention where original named plaintiff barred by statute of limitations from asserting one claim); *New Jersey Carpenters Health Fund v. Residential Cap.*, *LLC*, No. 08 CV 8781 (HB), 2010 WL 5222127, at *4 (S.D.N.Y. Dec. 22, 2010) (granting motion to intervene of right since "[a]ny disposition on the merits would inevitably affect [absent class members'] claims since they arise from the same course of conduct and assert the same legal theories as the current plaintiffs"); *Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (granting intervention as of right where named plaintiff settled his claims).

Like Named Plaintiffs, the Intervenors' constitutional and federal statutory rights to reside in less-restrictive community-based residential settings, rather than being wrongly and unnecessarily institutionalized in hospitals, nursing homes, psychiatric wards, intermediate care facilities, and other institutional settings. Intervenors seek intervention to challenge the same policies and practices that the original Named Plaintiffs challenge. Their interests are aligned and interwoven to an extent more than sufficient to permit intervention, much less mandate intervention as of right.

The District Court's conclusions regarding Intervenors' motion to intervene were without basis and contrary to long-established law. The decision should be

reversed, and Intervenors should be permitted to proceed as additional named plaintiffs.

### III. THE DISTRICT COURT ERRED BY DISMISSING THE AMENDED COMPLAINT WITHOUT FULL BRIEFING OR OPPORTUNITY TO BE HEARD

The procedure employed by the District Court in dismissing the Amended Complaint fundamentally was unfair and unduly prejudicial because it denied Named Plaintiffs any opportunity to be heard or to fully brief and argue their positions. Rather, the District Court ruled it had no subject matter jurisdiction over the claims based on a short pre-motion letter from Appellees requesting a conference filed in accordance with the court's Individual Practices that was *sua sponte* converted into a motion to dismiss and granted by the District Court. This was plain error, as this Court clearly has held that absent explicit consent from the parties, pre-motions letters are not a sufficient method of briefing a dispositive motion.

In *International Code Council v. UpCodes Inc.*, this Court recently ruled that the District Court had erred by *sua sponte,* and without notice, converting the parties' pre-motion letters to briefs on a motion to dismiss, and then granting that motion, noting a clear prerogative and instruction to district courts to "not [] dismiss an action pending before it without first providing the adversely affected party with notice and an opportunity to be heard." 43 F 4th 46, 53 (2d Cir. 2022). Indeed, this Court

reiterated this holding earlier this year. *See Kowalchuck v. Metro. Transp. Auth.*, 94 F.4th 210, 216-18 (2d Cir. 2024).

While a court may *sua sponte* consider the question of subject matter jurisdiction, there is a presumption that the action is "inappropriately dismissed" where the court dismisses the action "without informing plaintiffs [the court was] contemplating such action." *McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001). In fact, this Court has previously held that dismissal, without affording a party the opportunity to be heard may be "by itself, grounds for reversal." *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999). This notice serves several purposes, including giving the "adversely affected party a chance to develop the record to show why dismissal is improper; it facilitates *de novo* review of legal conclusions by ensuring the presence of a fully-developed record before an appellate court; and, it helps the trial court avoid the risk that it may have overlooked valid answers to what it perceives as defects in plaintiff's case." *McGinty*, 251 F.3d at 90.

Providing an adversely affected party with notice and opportunity helps "avoid[] the risk that the court may overlook valid answers to its perception of defects in the plaintiff's case" and denying a plaintiff the opportunity to be head "tend[s] to produce the very effect the court seeks to avoid—a waste of judicial resources—by leading to appeals and remands." *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999).

42

Here, this Court can reverse on this basis alone, under the clear rules set out in *International Codes* and its progeny. It is indisputable that the letters submitted by the parties and relied upon by the District Court were insufficient to grant a dispositive motion. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th at 55 (holding where party was only allowed to submit a three-page letter, the court denied the "non-moving party the opportunity to present its best arguments in opposition"). This is especially true given the fact-specific and intensive arguments necessary to determine if an exception to the mootness principle applies, and the lack of subject matter jurisdiction is not unmistakably clear. *Id.* at 54 (holding where the parties motion "did not clearly lack merit" the situation was "poles apart" from the limited circumstances in "abbreviated proceedings [were] appropriate"); *see also Mojias v. Johnson*, 351 F.3d 606, 610-11 (2d Cir. 2003) ([U]nless it is unmistakably clear that the court lacks jurisdiction…, we believe it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition.").

This Court has authority to review the mootness issues *de novo* and resolve all of the issues presented herein without further fact finding. But, if the Court determines that additional development of the record is necessary, in order to determine whether the class here is inherently transitory or Named Plaintiffs' claims are otherwise not moot, this Court should reverse solely on this procedural point to allow development of the record in the District Court. At a minimum, the District

Court's order should be reversed because the record before it was insufficient to support the Order.

## CONCLUSION

For the reasons discussed herein, the District Court's Order should be reversed.

Dated:  May 9, 2024
     New York, New York

**KASOWITZ BENSON TORRES LLP**

By: */s/ David J. Abrams*
David J. Abrams
Stephen P. Thomasch
Andrew W. Breland
Yarden N. Hodes
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
dabrams@kasowitz.com
sthomasch@kasowitz.com
abreland@kasowitz.com
yhodes@kasowitz.com

**DISABILITY RIGHTS NEW YORK**

Jennifer J. Monthie
Benjamin Taylor
Julie M. Keegan
25 Chapel Street
Suite 1005
Brooklyn, New York, 11201
Telephone: (518) 432-7861
jennifer.monthie@drny.org
ben.taylor@drny.org
julie.keegan@drny.org

*Attorneys for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because it contains 10, 213 words (based on the Microsoft Word word-count function) excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii). This brief complies with the typeface requirements of FRAP 32(a)(6) and the type style requirements of FRAP 32(a)(7) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type.

/s/ David J. Abrams
David J. Abrams

**SPECIAL APPENDIX**

i

## TABLE OF CONTENTS

**Page**

Memorandum Opinion and Order granting Motion
  to Dismiss and Denying Motion to Intervene,
  dated February 20, 2024 ........................................ SPA-1

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   2/20/2024
```

T.C. et al.,

                          Plaintiffs,

        -v-

NEW YORK STATE DEPARTMENT OF
HEALTH et al.,

                          Defendants.

No. 22-cv-5045 (MKV)

MEMORANDUM OPINION & ORDER
GRANTING MOTION TO DISMISS AND
DENYING MOTION TO INTERVENE

MARY KAY VYSKOCIL, District Judge:

        This case is about individuals with various developmental and intellectual disabilities who

face long delays in moving from restrictive institutional facilities to community-based residential

settings.  Plaintiffs' counsel originally filed this case on behalf of eight individuals, an organization

named Disability Rights New York ("DRNY"), and a purported class of individuals alleged to be

similarly situated to the eight original individual plaintiffs [ECF No. 1].  Within a few months of

the filing of the original complaint, two of the individual plaintiffs were placed in community

residences, and Plaintiffs filed their operative pleading, the Amended Complaint, which removed

the plaintiffs who had been placed, added two new individual plaintiffs, and added claims of

constitutional violations [ECF No. 35 ("AC")].

        Plaintiffs then moved for a preliminary injunction requiring Defendants—the New York

State Department of Health, Mary Bassett in her official capacity as Commissioner of DOH, the

New York State Office for People with Developmental Disabilities ("OPWDD"), and Kerri

Neifeld in her official capacity as Commissioner of OPWDD—"promptly" to place the individual

plaintiffs in community residences [ECF Nos. 37, 38, 39, 40].  Defendants responded that they

SPA-2

were working diligently to secure appropriate placements (and had found a placement for one of the plaintiffs since the filing of the Amended Complaint), but each individual presented a unique and complex set of behavioral challenges, clinical needs, and geographical preferences, and, in many instances, community residences had concluded they could not safely serve these individuals alongside their other residents [ECF No. 46, 47, 48, 49, 50, 51, 52, 53, 54].

The Court denied Plaintiffs' motion for a preliminary injunction [ECF No. 71 ("Op.")]. The Court concluded that Plaintiffs had failed to show a likelihood of success on the merits of any of their claims. Moreover, Plaintiffs had failed to identify specific relief that would remedy their alleged injuries. Nevertheless, the Court set a relatively short deadline for Defendants to file an affidavit detailing what further steps they had taken to place the remaining individual plaintiffs, and Defendants reported significant progress [ECF No. 72-1].

In the interim, Defendants filed a motion to dismiss most, but not all, of Plaintiffs' claims [ECF Nos. 67, 68, 70]. As relevant here, Defendants argued that DRNY lacks standing. Plaintiffs opposed that motion [ECF No. 69 ("Pl. Opp.")].

Thereafter, approximately thirteen months after they initiated this case, Plaintiffs' counsel filed a motion to intervene, arguing that "the addition of the Proposed Plaintiffs is needed to protect the interests of all class members" [ECF No. 77, 78 ("Pl. Mot.") at 2, 79, 80]. By that time, Defendants had secured community-based placements for nine of the ten individual plaintiffs who had appeared in this action since its inception. *See* Pl. Mot. at 1. Plaintiffs' counsel proposed to allow intervention as plaintiffs by eight new individuals, with diverse diagnoses, requirements, and preferences, who were awaiting placements in community residences at the time Plaintiffs' counsel filed the motion.

Now, as Plaintiffs concede, Defendants have "successfully placed" all of the individual

2

SPA-3

plaintiffs and many of the proposed intervenors [ECF No. 97 ("Pl. January 2024 Letter")]. Defendants now seek dismissal of this entire action for lack of subject matter jurisdiction [ECF Nos. 96, 98]. Plaintiffs' counsel argue that the Court should respond to the mootness of the individual plaintiffs' claims by granting intervention. For the reasons set forth below, this case is DISMISSED, and the motion to intervene is DENIED.

## I.   BACKGROUND

### A.  Plaintiffs Initiate this Action with Eight Individual Plaintiffs and DRNY

Plaintiffs initiated this action by filing the original complaint [ECF No. 1 ("OC")]. The original complaint named as plaintiffs eight individuals who have various developmental and intellectual disabilities, among other issues, and who, when the original complaint was filed, were living in institutions. OC ¶¶ 2, 11–18. Several of these plaintiffs appeared through a next friend.[1] The other individual plaintiffs asserted their claims on behalf of themselves and a purported class of similarly situated individuals. An organization called Disability Rights New York ("DRNY"), "a Protection and Advocacy system," was also named as a plaintiff. OC ¶ 20.

Plaintiffs alleged that Defendants had determined each individual plaintiff was entitled to move from the institution where he or she was living to a less restrictive, community-based Certified Residential Opportunity ("CRO") and to receive support services funded by the Medicaid Home and Community Based Services Waiver ("HCBS Waiver"). OC ¶¶ 1–4, 91; *see also* AC ¶¶ 1–4. Plaintiffs further alleged that they had remained in institutions long after they were deemed entitled to move to community residences. *See* OC ¶¶ 6, 88–89, 128–129, 132, 159, 163, 185–189, 218, 243, 260, 279. According to Plaintiffs, there were plenty of vacancies in community residences, but Defendants had failed to furnish the services to which the individual plaintiffs were

---

[1] The Court granted Plaintiffs' unopposed motion for the individuals with disabilities and their next friends to proceed anonymously [ECF Nos. 30, 42].

entitled because, Plaintiffs alleged, Defendants had failed to develop an adequate system for placing these individuals.  *See* OC ¶¶ 6, 319.  Notably, after treating physicians recommend an individual for a CRO, individuals at OPWDD attempt to identify an appropriate placement and make referrals, and then a provider of residential services, whether private or state operated, must agree to accept the individual.  *See* OC ¶¶ 6, 319.

Defendants filed a pre-motion letter seeking leave to file a motion to partially dismiss the original complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that DRNY lacks standing and various claims were facially deficient [ECF No. 31].  Plaintiffs first filed a letter responding to arguments in Defendants' pre-motion letter [ECF No. 32].  Plaintiffs then filed another letter informing the Court of their intention to file an amended complaint as of right [ECF No. 34].

### B.  The Amended Complaint

Plaintiffs filed the Amended Complaint [ECF No. 35 ("AC")].  The Amended Complaint removed two of the individual plaintiffs named in the original complaint because they had been placed in appropriate CROs.  It added two new individual plaintiffs and constitutional claims.  The Amended Complaint asserts nine causes of action.

First, Plaintiffs alleged that Defendants' failures to provide the plaintiffs with Certified Residential Opportunities and HSBC Waiver services (which cannot be provided to individuals in institutions) violate the "reasonable promptness" provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(8), and 42 U.S.C. § 1983.  AC ¶¶ 384–389.  Second, Plaintiffs alleged that Defendants' failures to make community residences and HSBC Waiver services available as an alternative to continued institutionalization violates the "freedom of choice" provision of the Medicaid Act, 42 U.S.C. § 1396n(c)(2)(C), and Section 1983.  AC ¶¶ 390–393.  Third, Plaintiffs alleged that they

were being denied the right to an administrative hearing under the Medicaid Act, 42 U.S.C. § 1396a(a)(3). AC ¶¶ 394–398. Fourth, Plaintiffs alleged that they were being discriminated against and unnecessarily segregated in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and its "integration mandate," 28 C.F.R. § 35.130(d). AC ¶¶ 399–408. Fifth, Plaintiffs alleged that Defendants' methods of administering the HSBC Waiver program are discriminatory, in violation of the ADA, 42 U.S.C. § 12132. AC ¶¶ 409–415. Sixth, Plaintiffs alleged violation of the inclusion mandate of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations. AC ¶¶ 415–424. Seventh, Plaintiffs alleged discriminatory methods of administration in violation of the Rehabilitation Act, 29 U.S.C. § 794. AC ¶¶ 425–431. Eighth, Plaintiffs alleged that they have a constitutionally protected interest in Medicaid-funded community residences and HSBC Waiver services and that Defendants were denying Plaintiffs a hearing on the denial of those benefits in violation of the Due Process Clause of the Fourteenth Amendment. AC ¶¶ 432–438. Ninth, Plaintiffs alleged that, because they lived in institutions while they awaited placements in community residences, Defendants were violating Plaintiffs' constitutional rights to be free from bodily restraint. AC ¶¶ 439–445.

### C. Plaintiff's Motion for Emergency Relief

Four months after they initiated this action, Plaintiffs filed a motion for a preliminary injunction [ECF Nos. 37, 38, 39, 40]. Plaintiffs requested "an order requiring Defendants promptly to secure placement in a community-based certified residential opportunity for Plaintiffs" [ECF No. 37]. In opposing Plaintiffs' motion for a preliminary injunction, Defendants explained that they were working diligently to place each individual plaintiff in an appropriate community-based residence. They explained, however, that each individual plaintiff presented a unique and complex set of behavioral challenges, clinical needs, and geographical preferences. Defendants explained

that, in many instances, residential providers had concluded that they could not safely serve the individual plaintiffs alongside their other residents. Defendants included detailed affidavits setting forth their efforts to place each of the individual plaintiffs named in the Amended Complaint [ECF No. 46, 47, 48, 49, 50, 51, 52, 53, 54].

The Court held a hearing on Plaintiffs' motion for a preliminary injunction [ECF No. 97-1 ("Tr.")].  On the record at the hearing, Plaintiffs acknowledged that two of the plaintiffs named in the original complaint were removed from the lawsuit because "they were placed in suitable community-based residences." Tr. at 11:7–18.  Plaintiffs also acknowledged that, as of the date of the hearing, one of the plaintiffs named in the Amended Complaint had been accepted for placement in a CRO.   Tr. at 11:24–12:2.   Furthermore, Plaintiffs acknowledged that "the defendants [were] endeavoring to meet their obligations" to place each individual plaintiff in a CRO but stated that Plaintiffs' "position [was] that the law requires outcomes and not merely efforts."  Tr. at 12:18–22.

At the hearing, the Court repeatedly pressed Plaintiffs on what relief they sought.  Plaintiffs ultimately requested an order directing Defendants to place each individual plaintiff in a CRO within 14 days, or, if Defendants were unable to do so, to "come back to this Court to detail their efforts to try to obtain such a placement for them and to detail why" each plaintiff was "not appropriate for any of the" residential providers operated directly by the State. Tr. at 17:9–19; see Tr. at 10:7–17; 15:13–25; 17:6–8).  Plaintiffs argued that "OPWDD has to be the provider of last resort." Tr. at 22:8–9. In other words, Plaintiffs contended that if no voluntary provider of residential services would agree to accept a particular individual, one of the State-operated residential providers should be compelled to accept the individual, even if that facility represented that it could not safely serve the individual together with its other residents.  Tr. at 22:8–9.

6

The Court denied Plaintiffs' motion for a preliminary injunction [ECF No. 71 ("Op.")]. The Court concluded that Plaintiffs had failed to show a likelihood of success on the merits of any of their claims. *See* Op. at 12. Nevertheless, the Court set a deadline for Defendants to file a status report further detailing their efforts to place the remaining individual plaintiffs in community residences. *See* Op. at 1, 21. In response to the Court's Order, Defendants reported that: two more plaintiffs had accepted placements; one plaintiff had declined a placement he was offered but was pursuing another potential placement; two plaintiffs were in the process of being screened for potentially appropriate placements; Defendants' ongoing efforts to find a potential placement for one plaintiff had been unsuccessful; and one plaintiff had been deemed too unstable for discharge from a hospital environment [ECF No. 72-1].

### D. Defendants' Motion To Dismiss

Defendants filed a motion partially to dismiss the Amended Complaint [ECF Nos. 67, 68 ("Def. MTD"), 70]. Specifically, the motion seeks dismissal of DRNY for lack of standing. The motion also seeks dismissal of most of the claims in the Amended Complaint for various reasons. Plaintiffs opposed the motion to dismiss [ECF No. 69].

### E. The Motion of Plaintiffs' Counsel To Add Intervenors

Thereafter, approximately thirteen months after they initiated this case, Plaintiffs' counsel filed the pending motion to intervene [ECF No. 77, 78 ("Pl. Mot."), 79, 80]. When Plaintiffs' counsel filed the motion to intervene, Defendants had secured community-based placements for nine of the ten individual plaintiffs who have appeared in this action since it began (all but one of the individual plaintiffs named in the Amended Complaint). *See* Pl. Mot. at 1; Def. Opp. at 2. Plaintiffs' counsel proposed to allow intervention as plaintiffs by eight new individuals who were, at the time Plaintiffs' counsel filed the motion to intervene, living in institutions and awaiting

placements in community residences.

Plaintiffs' counsel seeks intervention as of right and, in the alternative, by permission. Plaintiffs' counsel argues that "[i]ntervention is necessary to protect the interests of the Proposed Plaintiffs and the class because Defendants are systematically seeking to moot the claims of the original named plaintiffs." Pl. Mot. at 2. Although the premise of the motion to intervene is that this matter will proceed as a class action, Plaintiffs have not filed a motion for class certification. Like the individual plaintiffs named in the original complaint and the Amended Complaint, the proposed intervenors have different and complex diagnoses, clinical needs, behavioral challenges, staffing requirements, and placement preferences. Defendants ask the Court to deny intervention as of right and by permission [ECF No. 84 ("Def. Opp.")].

### F.  The Placement of All Individual Plaintiffs and Many Proposed Intervenors

After the motion to intervene was fully submitted, Defendants placed in a community residence the last individual plaintiff named in the Amended Complaint. Defendants therefore filed a letter requesting dismissal of this entire action for lack of subject matter jurisdiction [ECF No. 96 ("Def. January 2024 Letter")]. They argue that DRNY has lacked standing from the outset and, now, the claims of all of the individual plaintiffs are moot.

Plaintiffs filed a letter in opposition to Defendants' request [ECF No. 97 ("Pl. January 2024 Letter")]. Plaintiffs' counsel acknowledged that Defendants have "successfully placed" in an appropriate community residence every individual plaintiff who has appeared in this action. Pl. January 2024 Letter at 2. Indeed, Plaintiffs' counsel acknowledged that "many of the proposed intervenor Plaintiffs also have been placed or have been offered placement in the community." *Id*. According to Plaintiffs' counsel, however, these placements reflect Defendants' efforts to moot Plaintiffs' claims. *Id*. Plaintiffs' counsel seeks to proceed with the lawsuit via the claims of the

remaining, unplaced proposed intervenors.  *Id.* at 3.

Defendants filed a letter in response to Plaintiffs' opposition [ECF No. 98 ("Def. February 2024 Letter")].  Defendants object to Plaintiffs' characterization of their motives for placing the individual plaintiffs and proposed intervenors in community residences.  *See* Def. February 2024 Letter at 1 n.1.  Defendants maintain that they have followed their normal processes, continuing efforts to find appropriate placements that were ongoing before Plaintiffs brought this suit.  *See* Def. Opp. at 2 ("Named Plaintiffs have received exactly the relief they requested through the normal OPWDD placement process"); Def. February 2024 Letter at 1 n.1.

**G.  The Discovery Process**

The Court specifically directed the parties to proceed expeditiously with the discovery in this case.  *See* Tr. at 43:13–18.  In one instance, approximately six months ago, the parties raised a dispute about the scope of the discovery [ECF No. 74].  The Court ruled: "since Plaintiffs assert putative class claims, Plaintiffs are entitled to non-burdensome discovery on Defendants' general practices relating to individuals in institutional settings who have been deemed eligible for placements in residential settings insofar as that information will illuminate whether Plaintiffs can satisfy the prerequisites of Rule 23 of the Federal Rules of Civil Procedure" [ECF No. 83].  In other words, the Court long ago instructed Defendants to produce the discovery necessary for Plaintiffs to file a motion for class certification.

Plaintiffs never thereafter suggested that Defendants were not complying with the Court's Order or raised another discovery dispute with the Court.  Then, only after Defendants informed the Court that they had placed all of the remaining individual plaintiffs and many of the proposed intervenors, Plaintiffs asserted that Defendants have failed to produce adequate policy-related discovery.  Pl. January 2024 Letter at 2.  Defendants maintain that they have complied with the

Court's Order and produced all required discovery.  Def. February 2024 Letter at 3–4.

## II.    LEGAL STANDARDS

### A.  Subject Matter Jurisdiction

Subject matter jurisdiction is a threshold question, rooted in the case or controversy requirement of Article III.  *See All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006).  Indeed, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson v. Shineski*, 562 U.S. 428, 434 (2011).  Moreover, "objections to subject-matter jurisdiction [] may be raised at any time." *Id.* at 434-35; *Biener v. Credit Control Services, Inc.*, No. 21-cv-2809 (KMK), 2023 WL 2504733, *3 (S.D.N.Y. 2023) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*.  If subject matter jurisdiction is lacking, the action must be dismissed.").

Mootness destroys subject matter jurisdiction because, when claims are moot, there is no longer a case or controversy between the parties for the Court to resolve.  *Dark Storm Indus. v. Hochul*, 2021 WL 4538640, *1 (2d Cir. 2021) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").  "[T]he condition of mootness [] is a condition that deprives the court of subject matter jurisdiction."  *Muhammad v. City of New York*, 126 F.3d 119, 122-23 (2d Cir. 1997); *see also Allen v. Wright*, 468 U.S. 737, 750 (1984) (mootness, like standing, operates as "fundamental limits on federal judicial power in our system of government").  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

"[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994); *see Bank v. Alliance Health*, 669 Fed. Appx. 584, 586 (2d Cir. 2016); *DeCastro v. City of New York*, No. 16-cv-3850 (RA), 2020 WL 4932778, at *9 & nn. 15–16 (S.D.N.Y. 2020) (collecting cases on class action standing and mootness); *LaVoice v. UBS*, 2013 WL 5380759, at *3 n.6 (S.D.N.Y. 2013). Narrow exceptions to this general mootness rule may apply where a motion for class-certification is already pending, or the plaintiff has not yet had a reasonable opportunity to move for class certification. *In re Nat'l Australia Bank Sec. Litig.*, 2006 WL 3844463, at *2 (S.D.N.Y. Nov. 8, 2006).

## B. Intervention

Rule 24(a) of the Federal Rules of Civil Procedure provides that a court "must" permit intervention "[o]n timely motion" by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Interpreting this Rule, the Second Circuit has held: "To prevail on a motion for intervention as of right, a movant must '(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). The Second Circuit has "underscored that a '[f]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application.'" *Floyd v. City*

*of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (emphasis in original).

Pursuant to Rule 24(b), a court may in its discretion permit intervention on a timely motion by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Permissive intervention is wholly discretionary. Indeed, as the Second Circuit has pointed out, a "denial of permissive intervention has virtually never been reversed." *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005). Moreover, the Second Circuit has specifically condoned a district court denying permissive intervention based on the same reasons it denied intervention as of right. *See Floyd*, 770 F.3d at 1057; *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 & n.3 (S.D.N.Y. 2016).

### III.   DISCUSSION

The Court must dismiss this case for lack of subject matter jurisdiction. The claims of the individual plaintiffs are moot, and DRNY lacks standing. Contrary to Plaintiffs' contentions, the Court is not required to resuscitate this case via intervention. Plaintiffs' counsel insists that "[i]n the class action context" intervention should be used in response to "pre-certification mooting." Pl. Mot. at 6 (quoting *In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006)). But Plaintiffs' counsel has not moved for class certification, even though they filed this case as a putative class action in 2022, and the Court long ago ordered Defendants to produce discovery relevant to such a motion [ECF Nos. 1, 83]. Furthermore, it appears unlikely that the proposed intervenors' claims are capable of classwide resolution. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). This lawsuit cannot be a moving target in which Plaintiffs' counsel add new plaintiffs as "Named Plaintiffs . . . receive[] exactly the relief they requested

through the normal OPWDD placement process."  Def. Opp. at 2.

### A. DRNY Lacks Standing.

DRNY alleges that, under federal law, it is a "Protection and Advocacy System" with the authority to "bring[] claims on behalf of individuals with disabilities."  AC ¶ 19–21.  Plaintiffs expressly disclaim reliance on the doctrine of "associational' standing."[2]  Pl. Opp. at 23 & n.15.  Rather, Plaintiffs contend that "DRNY has standing to participate as a plaintiff based on standing conferred directly by Congress."  Pl. Opp. at 23.

The great weight of precedent, however, makes clear that DRNY lacks standing.  "[T]he 'irreducible constitutional minimum' of standing" requires a plaintiff to show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–560 (1992)); *see W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106–107 (2d Cir. 2008).  There is, moreover, a "general prohibition on a litigant's raising another person's legal rights."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).

Drawing on these principles, a court in the Eastern District of New York recently concluded that DRNY lacked standing in a case similar to this one.  *Disability Rights New York v. New York State et al.*, 2019 WL 2497907, at *5 (E.D.N.Y. June 14, 2019) ("DRNY, even though authorized under statute to bring claims on behalf of others, is asserting injuries that it did not suffer, but were

---

[2] An organization may have Article III standing in one of two ways: (1) it may have associational standing to sue on behalf of its members if one member of the organization has standing, *see NY Civil Liberties Union v. NYC Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2014); or (2) the organization "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy," *Warth v. Seldin*, 422 U.S. 490, 511 (1975).  If an organization is not relying on associational standing, it must satisfy the test for standing in the same way as any other person. *See Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998); *Fam. Equal. v. Becerra*, 2022 WL 956256, at *3 (S.D.N.Y. Mar. 30, 2022), *aff'd sub nom.* 2024 WL 618760 (2d Cir. Feb. 14, 2024).

suffered by third-parties. In this Circuit, there is a bar on such third-party standing."), *report and recommendation adopted*, 2024 WL 20753 (E.D.N.Y. Jan. 2, 2024); *see also Woods Services v. Disability Rights New York*, 342 F. Supp. 3d 592, 603–605 (E.D. Pa. 2018) (dismissing DRNY's claims for lack of standing). This Court agrees. Plaintiffs cite their statutory authority to vindicate the rights of the disabled, but "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo*, 578 U.S. at 339 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). Plaintiffs do not attempt to show that DRNY has suffered an injury itself. As such, Plaintiffs have not shown that DRNY has standing in its own right.

## B. The Individual Plaintiffs' Claims Are Moot.

There is no question that the claims of the individual plaintiffs are moot. Plaintiffs admit that Defendants have "successfully placed" in a community residence every individual plaintiff who has appeared in this action, in the original complaint and the Amended Complaint. Pl. January 2024 Letter at 2. Indeed, Plaintiffs acknowledge that "many of the proposed intervenor Plaintiffs also have been placed or have been offered placement in the community." Pl. January 2024 Letter at 2. In other words, all of the individual plaintiffs have received precisely the outcome they sought when they brought this lawsuit, and there is no longer a live case or controversy between the individual plaintiffs and the defendants in this action. *See Dark Storm Indus.*, 2021 WL 4538640, *1; *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

Plaintiffs cannot and do not contest that individual plaintiffs' claims become moot when those individuals are placed in community residences. Plaintiffs recognized this point when they filed the Amended Complaint and removed two of the original plaintiffs because they had been placed. *See* Tr. at 11:7–18. As further confirmation, Plaintiffs' counsel accuse Defendants of

14

systematically mooting the individual plaintiffs' claims by placing them in community residences. *See* Pl. Mot. at 2; Pl. January 2024 Letter at 2; *see also* Def. Opp. ("Named Plaintiffs have received *exactly* the relief they requested through the normal OPWDD placement process," but Plaintiffs' attorneys merely "complain that this result has adversely affected their litigation posture."). Indeed, Plaintiffs' counsel urge the Court to grant their motion for intervention in response to the "pre-certification mooting" of the individual plaintiffs' claims.  Pl. Mot. at 6 (quoting *In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844463, at *3).

The case or controversy requirement of Article III dictates that "at least one plaintiff must have standing to sue." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019); U.S. Const. art. III, § 2.  Here, DRNY lacks standing, and all of the individual plaintiffs' claims are moot.  As such, the Court must dismiss this case for lack of jurisdiction.

### C.  Plaintiffs' Counsel Cannot Resuscitate this Case Via Intervention.

The motion to intervene was not brought by independent third parties who learned of this lawsuit and filed the motion in an effort to protect their potential interest.  Rather, the motion to intervene is brought by Plaintiffs' counsel in an effort to save their purported class action.  By their own account, Plaintiffs' counsel started "pursuing adequate class substitutions" when they "became aware of the potential need to fill a class representative gap after OPWDD placed several of the Plaintiffs into community residences." Pl. Mot. at 8.  In these circumstances, the motion is not timely, and the proposed intervenors do not have an interest in this action that may be impaired by its disposition.  For these reasons, the Court denies intervention "as of right *and* by permission." *Floyd*, 770 F.3d at 1058 (emphasis in original).

In further support of the Court's discretionary decision to deny permissive intervention, the Court observes that this case is unlikely to meet the requirements for class certification.  The

proposed intervenors, like the plaintiffs, have different sets of diagnoses, behavioral challenges, staffing requirements, and preferences.  They are screened by different sets of decisionmakers.  All of these factors bear on the time it takes to place individuals in residential facilities.  There is likely no "classwide resolution" available.[3]  *Wal-Mart Stores*, 564 U.S. at 350.

Plaintiffs' counsel insist that the Court must grant their motion to intervene simply because they assert putative class claims, but Plaintiffs' counsel are wrong.  Plaintiffs rely on cases in which a class had already been certified or a motion for class certification was pending when the claims of the named plaintiffs became moot and new named plaintiffs intervened.  *See* Pl. Mot. at 6 (citing *In re Currency Conversion Fee Antitrust Litig.*, 2005 WL 3304605, at *1 (S.D.N.Y. Dec. 7, 2005) (certified); *Diduck v. Kaszycki & Sons Contractors, Inc.,* 149 F.R.D. 55, 57 (S.D.N.Y. 1993) (certified)).  Plaintiffs have not filed a motion for class certification.

Plaintiffs' counsel also cite cases in which no motion for class certification had yet been filed because the litigation was in an early stage, and little or no discovery had taken place.  *See In re Nat'l Austl. Bank Sec. Litig.*, 2006 WL 3844463, at *3.  This case is not remotely similar.  The Court directed the parties to begin discovery six months before Plaintiffs' counsel filed the motion to intervene.  *See* Tr. at 43:13–18.  Moreover, the Court specifically ordered Defendants to produce discovery to "illuminate whether Plaintiffs can satisfy the prerequisites of Rule 23 of the Federal Rules of Civil Procedure" [ECF No. 83].  Plaintiffs never suggested that Defendants were failing

---

[3] As noted above and explained in detail in the Court's earlier Opinion [ECF No. 71], Plaintiffs have suggested that a form of classwide relief would be for Defendants to compel State-operated providers of residential services to accept any hard-to-place individual, even if the State-operated facility represents that it cannot safely serve that individual alongside its other residents. Op. at 8, 21–22; *see* Tr. at 22:8–9. But the "integration mandate" that Plaintiffs claim Defendants are violating by failing to place these hard-to-place individuals requires only reasonable modifications that do not "fundamentally alter the nature of the . . . program." *See* Op. at 21–22 (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) and quoting 28 C.F.R. § 35.130(b)(7)). As the Court previously explained, ordering Defendants to override the clinical judgment of residential facilities and compelling them to accept residents those facilities represent they cannot safely serve clearly "would require fundamentally altering the nature of the State program." Op. at 22.

to comply with that Order until after this case became moot, and Defendants maintain that they have complied. *See* Def. February 2024 Letter at 3–4.

Plaintiffs also place enormous weight on a footnote in *Elisa W. v City of New York*, 82 F.4th 115 (2d Cir. 2023). *See* Pl. January 2024 Letter at 2–3. A putative class of children in foster care alleged "systemic failures" in the oversight of "agencies responsible for the day-today care of children." *Elisa W. v. City of New York*, No. 15-cv-5273 (KMW), 2021 WL 4027013, at *1 (S.D.N.Y. Sept. 3, 2021), *vacated and remanded*, 82 F.4th 115 (2d Cir. 2023). The plaintiffs in that case filed motions for class certification at the same time they filed the complaint and again four months later. *See id.* at *4; 15-cv-5273, ECF Nos. 1, 9, 75, 87. Having denied those motions for class certification without prejudice, the district court later refused to dismiss the case as moot, concluding that "the Court [would have] the power" to "relate" a renewed motion for certification "back to the date of the original compliant," since the population of children in foster care is inherently transitory. *Elisa W. by Baricelli v. City of New York*, No. 15-cv-5273 (LTS), 2017 WL 3841868, at *2 (S.D.N.Y. Sept. 1, 2017). In an opinion vacating a later denial of class certification, the Second Circuit agreed that "class certification *may* relate back to the filing of the complaint, where . . . the putative class . . . are 'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" *Elisa W.*, 82 F.4th at 122 n.2. (emphasis added) (quoting *Comer v. Cisneros*, 37 F.3d 775, 799 (2d Cir. 1994)).

Again, this case is not remotely similar. As the Court has already stated, Plaintiffs' counsel have never filed a motion for class certification. Contrary to the suggestion of Plaintiffs' counsel, the Second Circuit has never held—in *Elisa W.* or elsewhere—that purported class claims *must* relate back to the filing of a complaint, and dismissal for mootness is "barred" by the mere assertion

of purported class claims in a complaint.  Pl. January 2024 Letter at 2; *See Comer*, 37 F.3d at 798

("[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the

entire action becomes moot.").

Moreover, *Elisa W.* involved an inherently transitory population of children in foster care

who were complaining about oversight of their "day-to-day care" before they aged out.  *Elisa W.*,

2021 WL 4027013, at *1.  Here, the premise of Plaintiffs' case is that developmentally disabled

individuals remain in institutions for extremely long periods of time.  Although Plaintiffs' counsel

now accuse Defendants of strategically expediting the placement of the individual plaintiffs to

moot their claims, Pl. January 2024 Letter at 2, Defendants have documented their longstanding

efforts to place these individuals, which efforts predate the filing of the original complaint [ECF

No. 46, 47, 48, 49, 50, 51, 52, 53, 54].  Indeed, at the hearing on their motion for a preliminary

injunction, Plaintiffs credited Defendants for "endeavoring to meet their obligations" to place each

plaintiff in a community residence.  Tr. at 12:18–22.  Notwithstanding the insistence of Plaintiffs'

counsel, the Court is not required to permit intervention by new plaintiffs merely because Plaintiffs

assert putative class claims in their pleading.

The Court thus turns to the ordinary requirements for intervention.  In the circumstances

of this case, the motion to intervene is not timely.  *See MasterCard Int'l Inc. v. Visa Int'l Serv.*

*Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593,

595 (2d Cir. 1986) (the district court should base its timeliness "determination upon all of the

circumstances of the case").  Timeliness is a prerequisite for both intervention as of right and

permissive intervention, and the untimeliness of the motion, alone, is sufficient reason to deny it.

*See Floyd*, 770 F.3d at 1057; *Kamdem-Ouaffo*, 314 F.R.D. at 134.

Plaintiffs' counsel filed the motion to intervene more than a year after they initiated this

lawsuit.  More importantly, Plaintiffs' counsel waited long after it was apparent that Defendants would continue their efforts to place plaintiffs, and, as such, plaintiffs would receive the very relief they sought, and their claims would become moot.  *See Catanzano v. Wing*, 103 F.3d 223, 233 (2d Cir. 1996) (the length of time the movant knew or should have known that the intervention motion would be necessary is "among the most important factors").  More than a year ago, Plaintiffs filed the Amended Complaint and removed two of the original plaintiffs because they had been placed in community residences, even before Plaintiffs filed their motion for a preliminary injunction requesting prompt placement for each individual plaintiff.  *See* AC; Tr. at 11:7–18.  Shortly after the Court denied the motion for a preliminary injunction, Defendants reported finding placements for several more plaintiffs [ECF No. 72-1].  Yet Plaintiffs' counsel waited five months after that status report to seek intervention.  The motion is not timely.

Furthermore, the proposed intervenors cannot show that they have an interest in this action that may be impaired by its disposition.  *See In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th at 799.  "An interest that is . . . contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Dubarry v. Annucci*, No. 21-cv-5487 (KMK), 2022 WL 17850435, at *1 (S.D.N.Y. Dec. 22, 2022).  Nor will "interests of a general or indefinite character."  *H.L. Hayden Co. of NY. Inc. v. Siemens Medical Sys., Inc.*, 797 F.2d 85, 88 (2d Cir. 1986).

The proposed intervenors do not have direct, legally cognizable interests in the claims of the individual plaintiffs named in the Amended Complaint.  Each individual plaintiff and proposed intervenor is a person, with a unique set of disabilities, requirements, and preferences, who wishes to live in the appropriate community residence for his or her own needs.  It makes no difference to E.B., one of the proposed intervenors, that Plaintiff A.H. has been placed and her claims are moot.

SPA-20

Rather, any interest of the proposed intervenors in this action is contingent on the filing of a motion for class certification and the granting of such motion.

Relatedly, the Court denying the motion to intervene and dismissing this action will not impair the proposed intervenors' ability to protect their interests. They simply must file their own lawsuits to vindicate their own rights. Plaintiffs asserts that the proposed intervenors face a "significant risk of prejudice" if they are required to file new actions. Pl. Mot. at 9. However, Plaintiffs fail to substantiate that assertion. They say only that the proposed intervenors would have to file a new lawsuit, and a new court would have to "familiarize itself with the issues here." Pl. Mot. at 9 & n.3. "This is not the sort of adverse practical effect contemplated by Rule 24(a)(2)." *Sec. & Exch. Comm'n v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972). For all of these reasons, the proposed intervenors are not entitled to intervene as of right.

The Court also declines to grant permissive intervention because the motion to intervene is not timely and because the Court's decisions to deny intervention and dismiss this case will not impair the proposed intervenors' ability to protect their interests. In addition, as Defendants point out, the arguments in favor of intervention are all premised on the assumption that this case should and will proceed as a class action, but Plaintiffs are unlikely to satisfy the requirements of Rule 23. *See* Def. Opp. at 2–3, 12–13.

According to Plaintiffs' counsel, this case is about "a crises of needless and widespread institutionalization" caused by Defendants' failures to promptly place individuals in community residences. AC ¶ 6. But the individual plaintiffs and proposed intervenors all present different and complex diagnoses, behavioral challenges, clinical needs, and preferences that factor into their placements. They have faced different very lengths of delays in their placements. They have been evaluated by different decisionmakers. In many instances, several different residential providers

20

independently refused to accept these individuals.

As the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes*, it is not enough for class certification that a purported class raise common questions (*e.g.* why are these placements taking so long?); rather, the "class-wide proceeding" must be able "to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). As became evident in connection with Plaintiffs' motion for a preliminary injunction, when these individuals are grouped together, the only relief they can seek is an order instructing Defendants to "promptly" find an appropriate placement for each individual [ECF No. 37]. As the Court explained in its decision denying preliminary relief, such an order "arguably is tantamount to 'a simple command that the defendant obey the law,' which would violate the specificity and clarity requirements for injunctions set forth in Rule 65(d) of the Federal Rules of Civil Procedure." Op. at 14 (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001)). Thus, far from being prejudiced by the denial of the motion to intervene and dismissal of this purported class action, the proposed intervenors who have not yet been placed might be better served by filing individual lawsuits.

### IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' motion to intervene [ECF No. 77] is DENIED, and this case is dismissed. The Clerk of Court respectfully is requested to terminate all pending motions and close this case.

**SO ORDERED.**

Date:  **February 20, 2024**
       **New York, NY**

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**

21